


**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**UNITED STATES OF AMERICA,**

**v.**

**CIVIL ACTION NO. 2:09cv195**
**[ORIGINAL CRIMINAL NO. 2:08cr45]**

**ONEIL MARKEITH WATSON,**

**Defendant.**

**MEMORANDUM OPINION AND FINAL ORDER**

This matter comes before the court on petitioner's, Oneil Markeith Watson ("Watson"), motion to vacate, set aside, or correct his sentence pursuant to Title 28, United States Code, Section 2255 ("Motion"). The United States responded in opposition to the petitioner's Motion, and the petitioner replied. For the reasons set forth below, the court **DENIES** petitioner's Motion.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 2008, Watson pled guilty, pursuant to a written plea agreement,[2] to counts one, three, and seven of a seven-count

---

[1] Having found that the motion, files, and records of the case conclusively show that the petitioner is entitled to no relief, the court did not hold an evidentiary hearing. See 28 U.S.C. § 2255.

[2] On April 25, 2008, this court issued an order permitting a United States Magistrate Judge to hold a guilty plea hearing, pursuant to Federal Rule of Criminal Procedure 11. (See Docket #11.) The petitioner consented to that hearing (see Docket #12), and, on May 6, 2008, pled guilty to counts one, three, and seven before United States Magistrate Judge Tommy E. Miller. The petitioner signed the statement of facts in open court, and counts two, four, five, and six were dismissed with prejudice upon motion by the United States.

indictment. Count one charged Watson with possession with the intent to distribute a quantity of a detectable amount of ecstasy on November 12, 2007, in Norfolk, Virginia, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); count three charged Watson with possession of a firearm, specifically a Special Weapons 9mm caliber semi-automatic rifle on November 12, 2007, in Norfolk, Virginia, in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and count seven charged Watson with being a felon in possession of a firearm, specifically a Taurus .38 caliber revolver on January 4, 2008, in Virginia Beach, Virginia, in violation of 18 U.S.C. § 922(g).[3] All additional charges were dismissed upon motion by the United States. Magistrate Judge Tommy E. Miller entered a Report and Recommendations recommending that this court accept Mr. Watson's plea, and this court adopted the Report and Recommendations by order on May 21, 2008. (See Docket #18.) Mr. Watson made no objection to the Report and Recommendations and was, thereafter, adjudged guilty to counts one, three, and seven of the indictment. (See Docket #18.)[4]

---

[3] Mr. Watson was convicted on March 7, 2000, of Robbery, Abduction, Conspiracy, and Use of a Firearm in the Commission of a Felony in the Circuit Court of Virginia Beach, Virginia. (Statement of Facts ¶ 7.)

[4] While the Report and Recommendations stated that Mr. Watson pled guilty to counts one, three, and four of the indictment, the subsequent Acceptance of Plea of Guilty, Adjudication of Guilt, and Notice of Sentencing issued by this court stated that Mr. Watson pled guilty to counts one, three, and seven of the indictment. (See Docket #18.) Moreover, the record

Subsequently, on August 6, 2008, Mr. Watson was sentenced by this court to a total of 130 months imprisonment, with 70 months imprisonment on counts one and seven, to run concurrently, and 60 months imprisonment on count three, to run consecutively.[5] At no point during the sentencing hearing did Mr. Watson make any objections. After his sentencing, Mr. Watson did not appeal.

Mr. Watson asks this court to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, claiming that his Sixth Amendment right to effective assistance of counsel[6] was undermined in four respects: 1) that the United States impermissibly modified the plea agreement prior to Mr. Watson pleading guilty and that Mr. Watson's counsel failed to object; 2) that the court improperly increased Mr. Watson's base offense level for count one by four points, and his counsel failed to object to or appeal this enhancement; 3) that Mr. Watson was improperly assigned a criminal history point for a "contributing to the delinquency of a minor" conviction, and his counsel failed to object to that assignment; and 4) that the court failed to consider the sentencing factors in

---

of the proceedings before Magistrate Judge Miller, the plea agreement, the statement of facts accompanying the plea agreement, and the record of the proceedings before this court note that the defendant pled guilty to counts one, three, and seven.

[5] Mr. Watson was also sentenced to three years of supervised release on counts one and seven, and five years on count three, all to run concurrently, for a total of five years.

[6] Mr. Watson's trial counsel was Mr. Walter B. Dalton.

28 U.S.C. § 3553(a), and counsel failed to object to that error.

## II. DISCUSSION

Under 28 U.S.C. § 2255, a prisoner may challenge a sentence imposed by a federal court if: 1) the sentence violates the Constitution or laws of the United States; 2) the sentencing court lacked jurisdiction to impose the sentence; 3) the sentence exceeds the statutory maximum; or 4) the sentence "is otherwise subject to collateral attack."[7] In challenging his sentence, the prisoner bears the burden of proving one of the aforementioned grounds by a preponderance of the evidence; and, if he satisfies that burden, the court may vacate, set aside, or correct his sentence. 28 U.S.C. § 2255. However, where the petitioner's motion, when viewed against the record, does not state a claim for relief, the Court should summarily deny the motion. United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988).

Moreover, the relief available under 28 U.S.C. § 2255 is not a substitute for direct appeal, which is the "normal and customary method" of correcting trial errors. Sunal v. Large, 332 U.S. 174, 177 (1947); see also Reed v. Farley, 512 U.S. 339, 354 (1994)(finding that habeas corpus review "will not be allowed to

---

[7] A sentence is "otherwise subject to collateral attack" where the petitioner shows that his sentence was affected by "a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979)(quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

service for an appeal."). Accordingly, "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, [a petitioner] must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999).

There is no dispute in this case that Mr. Watson did not appeal his conviction or sentence, and did, in fact, waive doing so in his plea agreement.[8] Therefore, without proof of cause and prejudice, or that a miscarriage of justice would result, Mr. Watson's claims are procedurally defaulted. In that regard, Mr. Watson has cited ineffective assistance of counsel as the cause of his default and thus has the burden of showing prejudice as a result of his counsel's ineffectiveness. See United States v. Richardson, 195 F.3d 192 (4th Cir. 1999) (noting that a petitioner may succeed on a procedurally defaulted claim by showing that he procedurally defaulted due to ineffective assistance of counsel); see also United States v. Breckenridge, 93 F.3d 132, 134 n.1 (4th Cir. 1996)(same). For the following reasons, Mr. Watson has failed to meet his burden.

---

[8] "The defendant waives his right to appeal the conviction and any sentence within the statutory maximum." (See Plea Agreement ¶ 5.)

**A. Ineffective Assistance of Counsel**

In order to prove ineffective assistance of counsel, a petitioner must show by a preponderance of the evidence that 1) the attorney's performance was deficient, and 2) the attorney's deficient performance prejudiced the petitioner by undermining the reliability of the judgment against him. Strickland v. Washington, 466 U.S. 668, 687 (1984). To show deficient performance, counsel's actions are measured against what "an objectively reasonable attorney would have done under the circumstances existing at the time of the representation." Savion v. Murray, 82 F.3d 593, 599 (4th Cir. 1996). Moreover, the court must attempt to "eliminate the distorting effects of hindsight," and instead indulge a "strong presumption that counsel's challenged conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Proof of the attorney's "gross incompetence" in representing the petitioner, therefore, is sufficient to demonstrate that the attorney acted unreasonably. Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986).

To demonstrate prejudice, the petitioner must show "a reasonable probability that, but for counsel's deficient performance, the outcome would have been different." Strickland, 466 U.S. at 694. In doing so, he must "demonstrate that the error worked to his actual and substantial disadvantage, not merely that the error created a possibility of prejudice." Satcher v. Pruett,

126 F.3d 561, 571 (4th Cir. 1997). In light of the fact that the petitioner must satisfy both of those prongs, the court may consider only one prong of the test if the petitioner does not carry the burden of proof. Strickland, 466 U.S. at 700.

**B. Alleged Modification of the Plea Agreement**

In his Motion, Mr. Watson contends that he and the United States agreed that he would plead guilty to counts one, three, and four of the indictment, and that the United States would, subsequently, move to dismiss counts two, five, six, and seven of the indictment. (Pet'r. Mot. 4.) He further contends that at the guilty plea hearing, the United States impermissibly modified that agreement, substituting count seven for count four, and Mr. Watson's counsel failed to object to that modification. (Pet'r. Mot. 4.) As a result, he claims, he "did not receive the plea as bargained [for] and was prejudiced by counsel's failure to investigate the variance in a guilty plea to count 4 as [opposed] to count 7." (Pet'r. Mot. 4.)

Mr. Watson, on this issue, has an even higher burden in attempting to prove ineffective assistance of counsel and that his sentence should be modified, vacated, or set aside. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked," Bousley v. United States, 523 U.S. 614, 621 (1998)(quoting Mabry v. Johnson, 467 U.S. 504, 508

(1994))(emphasis added), unless it was first attacked on direct appeal, the petitioner could demonstrate "cause and actual prejudice," or the petitioner can show that he is "actually innocent." Bousley, 523 U.S. at 621.[9] In terms of the voluntariness of the plea, where a plea agreement is favorable to a defendant and it was reasonable and prudent to accept the plea, that is itself evidence of the voluntary and intelligent nature of the plea. Fields, 956 F.2d at 1299. Therefore, Mr. Watson must produce sufficient evidence to overcome that presumption.

In this case, it is abundantly clear that Mr. Watson's plea was beneficial and, hence, presumptively voluntary. The record of the proceedings before Magistrate Judge Miller show that Mr. Watson confirmed that he was voluntarily entering into a plea agreement. Additionally, the terms of the agreement further demonstrate its beneficial nature. In exchange for Mr. Watson's plea, the United States dismissed counts two, four, five, and six, where count six, because it was a second violation of 18 U.S.C. § 924(c)(1), carried a mandatory consecutive 25 year prison term. See 18 U.S.C. § 924(c)(1); U.S.S.G. § 4B1.1(c)(2). In addition, the United States motioned for a one-level decrease for acceptance of responsibility, pursuant to U.S.S.G. 3E1.1(b); and, pursuant to the

---

[9] The defendant has not alleged or implied that he is actually innocent. In fact, the plea agreement and accompanying statement of facts flatly contradict such an implication. Thus, the court will not address that issue under the instant habeas corpus Motion.

plea agreement, Mr. Watson was given the opportunity for additional sentence reductions upon cooperation with the United States. (Plea Agreement ¶¶ 11, 15.)

In terms of competent counsel, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy," including those statements affirming satisfaction with the assistance of counsel. Fields v. Att'y Gen. of State of Md., 956 F.2d 1290, 1299 (4th Cir. 1992)(emphasis added). Without such proof, the court will "dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005). Therefore, in raising an ineffective assistance of counsel claim after a guilty plea, Mr. Watson has the heightened burden of showing that he was prejudiced to the point that, but for counsel's errors, "he would not have pleaded guilty and would have insisted on going to trial." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988).

Mr. Watson acknowledged in his plea agreement that he was satisfied with his counsel. (Plea Agreement ¶ 3.) Additionally, Mr. Watson, in open court during his plea colloquy, professed his satisfaction with counsel. Consequently, Mr. Watson must show by clear and convincing evidence that his counsel was ineffective. However, the only evidence that Mr. Watson offers is his claim that

Mr. Dalton improperly allowed the United States to modify the plea agreement, and Mr. Dalton never explained "the consequences of pleading to an amended plea agreement." (Watson Aff. Resp. Aff. Walter B. Dalton ¶ 3.) However, the court does not find Mr. Watson's self-serving claim to be clear and convincing proof. Instead, the greater weight of the evidence from the facts, records, and files of this case contradict Mr. Watson's assertions.

First, the records of the proceedings before Magistrate Judge Miller and before this court, the plea agreement, and the statement of facts all demonstrate that Mr. Watson, indeed, agreed to plead guilty to counts one, three, and seven, not counts one, three, and four. (See Plea Agreement ¶ 1) ("The defendant agrees to plead guilty to Counts One, Three and Seven of the indictment."); (see also Statement of Facts 1) ("If the charges in the indictment were to proceed to trial, the United States would prove beyond a reasonable doubt that the defendant . . . [is guilty] as charged in Counts One, Three and Seven, respectively."). Moreover, Mr. Watson's own statements throughout, and at the end of, both the plea agreement and the statement of facts show that he was informed of the counts to which he was pleading guilty. On each page of the plea agreement and the statement of facts, Mr. Watson placed his initials, "O.W." (See Docket #14, 15.) Similarly, at the end of the plea agreement and the statement of facts, Mr. Watson signed his name below a statement confirming that he was fully informed as

to the contents of those documents, understood his rights, and assented to the contents of those documents. (See Plea Agreement 5; Statement of Facts 13.)

Additionally, the court finds that any "modifications" to the plea agreement were not made in a manner that deceived Mr. Watson. In his affidavit, Mr. Dalton explains that:

> The government agreed to offer a plea agreement which would require the defendant to plead guilty to one(1) of three(3) drug charges, one(1) of two(2) charges of possession of a firearm by a convicted felon, and one(1) of two(2) charges of a possession of a firearm in furtherance of a drug trafficking offense, and drafted a plea agreement which provided that the defendant plead guilty to three(3) charges: Counts One, Three and "Four" of the indictment. The government also drafted a statement of facts, which summarized the facts for Counts One, Three, and "Seven." [ ] After this discrepancy was pointed out by counsel, the government changed the plea agreement to the same three(3) counts as the statement of facts: Counts One, Three and Seven.

In that sense, Mr. Watson was clearly aware of the counts to which he would plead guilty; and, because the statement of facts always pertained to counts one, three, and seven, the change made to the plea agreement did not undermine Mr. Watson's knowing and voluntary consent to plead guilty to those counts. Further, the initial discrepancy between the statement of facts and the plea agreement was reconciled prior to the guilty plea hearing, and before that hearing "counsel met with the defendant and reviewed, signed, and initialed the original plea agreement-which provided for the defendant to plead guilty to Counts One, Three and Seven of the

indictment . . ." (Dalton Aff. ¶ 6)(emphasis added). Therefore, the discrepancy was ineffectual, and Mr. Dalton acted reasonably in not objecting.

Secondly, Mr. Watson's counsel, Mr. Dalton, acted reasonably in informing Mr. Watson of the terms of the plea agreement. Mr. Dalton attests that he met with Mr. Watson to discuss his case on numerous occasions, (Dalton Aff. ¶ 1), and that he reviewed with Mr. Watson the charges in the indictment, the possible penalties, and Mr. Watson's options on how to proceed. (Dalton Aff. ¶ 2.)

Mr. Watson has failed to carry his burden in showing that Mr. Dalton acted with "gross incompetence," see Kimmelman, 477 U.S. at 381-82, or outside of "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.[10] The court cannot rely on Mr. Watson's bald, self-serving assertions in deciding whether to vacate, set aside, or correct his sentence. Instead, the court must find that Mr. Watson has proffered clear and convincing evidence that his assent to the plea agreement and statement of facts, as well as his affirmations in open-court, were incorrect.

---

[10] In addition to not proving that his counsel erred, Mr. Watson has not met his additional burden of showing that but for counsel's actions, he would not have pled guilty and would have proceeded to trial. See Hooper, 845 F.2d at 475. Indeed, if the defendant had proceeded to trial, the United States would have likely proceeded on all counts of the indictment. Considering that the defendant has done nothing to imply his innocence in this case, he likely would have been found guilty of all the charges and would have been subject to a longer sentence. In that sense, the court finds it unlikely that the defendant would have proceeded to trial if his counsel had objected to the plea agreement as entered.

See Lemaster, 403 F.3d at 221-22. However, Mr. Watson has not provided such proof and his Motion is denied, on this issue.

**C. Application of Four-Level Enhancement, Pursuant to U.S.S.G. § 2K2.1(b)(6)**

Mr. Watson next objects to the way the court applied the United States Sentencing Guidelines (collectively "the Guidelines") to his sentencing. (Pet'r. Mot. 5.) He alleges that the court improperly applied a four-level enhancement to his base-offense level for count one, pursuant to U.S.S.G. § 2K2.1(b)(6). (Pet'r. Mot. 5.) Mr. Watson claims that the court was forbidden by the commentary to U.S.S.G. § 2K2.4 from enhancing his penalty, and Mr. Dalton was ineffective for failing to object to or seek direct review of that enhancement. (Pet'r. Mot. 6-7.)

The court notes that claims based on errors in sentencing are, generally, not proper subjects for motions made pursuant to 28 U.S.C. § 2255. As noted by the Fourth Circuit in United States v. Pregent, 190 F.3d 279(4th Cir. 1999), a calculation error under the United States Sentencing Guidelines by itself is not cognizable under 28 U.S.C. § 2255, such that failure to raise a non-constitutional error in sentencing on direct appeal amounts to a waiver of the right to object. Id. at 283-84; see also United States v. Emmanuel, 869 F.2d 795 (4th Cir. 1989)(concluding the same). The rationale for such a rule is clear:

> If defendants could routinely raise, in a 2255 collateral proceeding, errors in sentencing not raised on direct appeal which the sentencing court had not had an

> opportunity to correct, Congress' intent of encouraging direct appellate review of sentences under the Sentencing Guidelines would be frustrated.

United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994) (quoting United States v. Essig, 10 F.3d 968, 979 (3rd Cir. 1993)). Therefore, "[b]arring extraordinary circumstances . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding." Pregent, 190 F.3d at 283-84 (collecting cases).[11] Consequently, Mr. Watson must prove by a preponderance of the evidence that his counsel was ineffective during sentencing.

Nevertheless, Mr. Watson's claims fail because he has not shown that his counsel acted unreasonably, mainly because the underlying claim that the enhancement was improperly applied is without merit. Section 2K2.1(b)(6) provides, in pertinent part, a four-level enhancement "if the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6). Therefore, to apply the enhancement the court must find by a preponderance of the evidence that the defendant possessed a firearm in connection with another felony offense. United States v. Battle, 499 F.3d 315, 323 (4th Cir. 2007). The Guidelines continue to state that "another felony

---

[11] In Pregent, the Fourth Circuit held, nevertheless, that a claim regarding sentencing error could be heard, even if procedurally defaulted, if the petitioner can show cause and prejudice for failure to raise the claim or can show that a miscarriage of justice occurred. 190 F.3d at 284 n.5. Therefore, the court addresses whether Mr. Watson's counsel was ineffective as a means for Mr. Watson to show cause and prejudice.

offense" means "any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1, comment. n.14(c)(emphasis added). Specifically, the enhancement should apply where the "other felony offense" is "a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1, comment. n.14(B)(ii).

In this case, Mr. Watson was charged in counts one and three in connection with an incident of drug-trafficking that took place on November 12, 2007. He was also charged in count seven in connection with an incident that took place on January 4, 2008. On that date, a Virginia Beach police officer stopped Mr. Watson in his vehicle and, upon consent from Mr. Watson, discovered large amounts of money in Mr. Watson's pants pockets, totaling $626.00. (Statement of Facts ¶ 4.) The officer then conducted a search of Mr. Watson's vehicle, recovering marijuana, ecstasy, packaging materials, digital scales, and a loaded Taurus .38 special revolver. (Statement of Facts ¶ 6.) Not only would this incident constitute a felony offense under Virginia law,[12] but it is

---

[12] In Virginia, it is a Class 5 felony (a felony punishable by a term of imprisonment not less than one year nor more than 10 years) for any person to knowingly or intentionally possess a Schedule I or II controlled substance as defined in the Virginia Drug Control Act. See Va. Code § 18.2-250; Va. Code § 54.1-3446;

analogous to the example given in the guideline for when the § 2K2.1(b)(6) enhancement should apply. See U.S.S.G. § 2K2.1, comment. n.14(B)(ii).[13] Therefore, Mr. Watson was not only a felon in possession of a firearm on that date, as he was charged and convicted in count seven, but he also possessed a firearm in connection with what would have been a drug-trafficking offense, had he been so charged. As a result, the enhancement was properly applied, and Mr. Watson's counsel was not ineffective in failing to raise a meritless argument during sentencing or on appeal.

Mr. Watson contends that certain provisions in the Guidelines make the four-level enhancement inapplicable to his case. He relies upon U.S.S.G. § 2K2.4, comment. n.4, which states that when a sentence is imposed for a conviction under 18 U.S.C. § 924(c) and an underlying offense, the sentence for the underlying offense should not be enhanced on the basis of "possession, brandishing, use, or discharge" of a firearm. It also advises to "not apply any weapon enhancement in the guideline for the underlying offense, for example, if . . . (B) in an ongoing drug trafficking offense, the defendant possessed a firearm other than the one for which the

---

Va. Code § 18.2-10(e). The drugs Mr. Watson possessed are Schedule I substances under Virginia law.

[13] "We have said that the intent to distribute can be inferred from a number of factors, including but not limited to: (1) the quantity of the drugs; (2) the packaging; (3) where the drugs are hidden; and (4) the amount of cash seized with the drugs." United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2004).

defendant was convicted under 18 U.S.C. 924(c)." U.S.S.G. § 2K2.4, comment. n.4. However, Mr. Watson's reliance upon these provisions is misplaced. In sum, these two provisions make the four-level enhancement inapplicable in cases where a defendant is convicted of violating 18 U.S.C. § 924(c) and an underlying drug trafficking offense, and the enhancement of the underlying offense and the 18 U.S.C. § 924(c) conviction are both 1) based upon possession of a single weapon at one point in time, or 2) based upon possession of the same or different weapons during the same or an ongoing drug trafficking offense. Neither of those is the case at bar.

The weapon that Mr. Watson possessed on November 12, 2007, the Special Weapons 9mm caliber semi-automatic rifle, which formed the basis for the 18 U.S.C. § 924(c) conviction, is not the same weapon, the Taurus .38 caliber revolver he possessed on January 4, 2008, which formed the basis for the four-level enhancement. Section 2K2.4, comment. n.4. makes clear that if the firearm possessed in the course of the underlying offense would also subject the defendant to an enhancement under § 2K2.1(b)(6), the enhancement would not apply. U.S.S.G. § 2K2.4, comment. n.4. In this case, the firearm that was possessed in connection with counts one and three would not also subject Mr. Watson to an enhancement under § 2K2.1(b)(6). Instead, another weapon--one of a different make and model, found in a different time and place, and found in connection with a different drug trafficking incident--subjects Mr.

Watson to the enhancement.

Similarly, as noted above, there was not an ongoing drug trafficking offense--there were two separate drug trafficking offenses, one that occurred on November 12, 2007, and the other which occurred on January 4, 2008. Counts one and three (the drug trafficking offense and the 18 U.S.C. § 924(c) offense, respectively) were based on the facts from November 12, 2007, and count seven and the four-level enhancement were based on the facts from January 4, 2008.[14] The mere fact that Mr. Watson's conduct on November 12, 2007, and January 4, 2008, both constituted drug trafficking offenses does not mean that they were a part of the same course of conduct or a part of a common scheme or plan; and, Mr. Watson's assertions that they were is insufficient to avoid applying the sentencing enhancement.[15]

---

[14] Counts five and six, which were dismissed as a part of the plea agreement, charged Mr. Watson with possession of drugs with the intent to distribute and possession of a firearm in furtherance of a drug trafficking crime on the basis of the January 4, 2008, incident.

[15] Mr. Watson's reliance upon United States v. Troupe, 307 Fed. Appx. 715 (4th Cir. 2008), and United States v. Timmons, 283 F.3d 1246 (11th Cir. 2002), is likewise misplaced. In Troupe, the defendant's convictions for the 924(c) and 922(g) offenses were based on the same weapon, found during a vehicle search. See Troupe, 307 Fed. Appx. at 718. In Timmons, unlike in this case, there was evidence of an ongoing drug trafficking offense, and the court held that they were a part of the same course of conduct or common scheme or plan. Timmons, 283 F.3d at 1254. In that instance, the enhancement was not appropriate. Id. There, the first offense was a part of an undercover operation, where no arrests were made, and the second offense was discovered during an execution of an arrest and search warrant which was, in part, based

In light of these facts, Mr. Dalton did not act unreasonably in representing Mr. Watson on this issue. He did not object to the enhancement because the enhancement was not improperly applied. Moreover, as noted above, Mr. Dalton met with Mr. Watson to discuss his case and the ramifications of pleading guilty to counts one, three, and seven. (Dalton Aff. ¶ 2.) Further, Mr. Dalton met with Mr. Watson to discuss and review Mr. Watson's presentence report ("PSR"), to which Mr. Watson did not question or object to the four-level enhancement. (Dalton Aff. ¶ 7.) In that sense, Mr. Watson was aware that the enhancement was possible prior to sentencing and was likely informed that no objection was going to be made in light of the propriety of the enhancement.

Moreover, trying to appeal such an enhancement would have likely operated to Mr. Watson's detriment. If Mr. Watson attempted to appeal, he would have breached the plea agreement, exposing himself to the consequences of such a breach. (See Plea Agreement ¶¶ 5)("The defendant waives his right to appeal the conviction and any sentence within the statutory maximum."); (see also Plea Agreement ¶ 19)(stating that if the defendant violates any provision of the agreement, the United States is released from any obligation to seek a downward departure or a reduction in sentence and the defendant is subject to prosecution for perjury or

on the undercover operation. Id. at 1248-49. Both of those cases contain dissimilar facts to the case at bar.

obstruction of justice). The fact that counsel did not expose Mr. Watson to such a risk was not only reasonable, but possibly the most prudent position to take in light of all the circumstances.[16]

Therefore, the court denies Mr. Watson's Motion on this issue.

**D. Application of One Criminal History Point, Pursuant to U.S.S.G. § 4A1.2**

Next, the defendant claims that the court improperly applied a criminal history point to his sentencing for his past conviction of "contributing to the delinquency of a minor." (Pet'r. Mot. 7.) Section 4A1.2(c)(1) states that sentences for misdemeanor and petty offenses are counted in calculating criminal history points except that "[s]entences for [the enumerated] prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense." U.S.S.G. § 4A1.2(c)(1). That section goes on to list thirteen offenses that should only be counted under those narrow circumstances. U.S.S.G. § 4A1.2(c)(1). The following section, U.S.S.G. § 4A1.2(c)(2), lists eight offenses that are never counted. It is clear that contributing to the

---

[16] The court notes that, even if a defendant enters into a plea agreement that knowingly and voluntarily waives the right to appeal, counsel may still be ineffective if failing to note a requested appeal. <u>See</u> <u>United States v. Parra</u>, 238 F.3d 417, 2000 WL 1714181, at *1 (4th Cir. Nov. 16, 2000). However, Mr. Watson has not alleged that he requested an appeal, and there is no indication in any submission before the court that he did so request.

delinquency of a minor is not enumerated in § 4A1.2(c)(1) or (2). Therefore, Mr. Watson would only succeed on his claim, if he can show by a preponderance of the evidence that contributing to the delinquency of a minor is "similar to" one of the enumerated offenses, see U.S.S.G. § 4A1.2(c)(1), and that his counsel was ineffective in not objecting on that basis.

Section 4A1.2, comment. n.12(A) (enacted as Amendment 709 to the Guidelines on November 1, 2007) sets out the standard for determining whether an offense is similar to one of the enumerated offenses in § 4A1.2(c)(1):

> In determining whether an unlisted offense is similar to an offense listed in subdivision (c)(1) or (c)(2), the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

U.S.S.G. § 4A1.2, comment. n.12(A).[17] At least one court, when applying a similar factor-oriented approach, has held that contributing to the delinquency of a minor is not sufficiently

---

[17] In light of Amendment 709, the court agrees with the petitioner that the Fourth Circuit's use of the "element test," see United States v. Harris, 128 F.3d 850, 854-55 (4th Cir. 1997), to assess similarity has been displaced by a factor-oriented approach. But cf. United States v. Osborne, 514 F.3d 377 (4th Cir. 2008) (noting that the Fourth Circuit applies "an 'elements test' in determining whether a prior offense is similar to an excepted listed offense in section 4A1.2(c)(1)," without addressing, though, the then-newly enacted Amendment 709 and note 12(A)).

similar to the enumerated crimes in § 4A1.2(c) to warrant exclusion from criminal history calculation. See United States v. Overholt, 307 F.3d 1231, 1252-53 (10th Cir. 2002)(distinguishing its factor-oriented approach to assessing similarity, which tests "whether the underlying behavior necessary to commit the prior misdemeanor shares the same general characteristics as the behavior required to commit an offense expressly listed under (c)(1) or (c)(2)," from the Fourth Circuit's then-used "element test," but still concluding that no "listed offense . . . is plainly similar to" the defendant's conviction of contributing to the delinquency of a minor)(emphasis added); but see United States v. Leon-Alvarez, No. 05-CR-4126-DEO, 2008 WL 5429724 (N.D. Iowa Dec. 31, 2008)(applying § 4A1.2, comment. n.12(A), and concluding otherwise).

The pertinent matter at this point is that, even if Mr. Watson's counsel had raised an objection that "contributing to the delinquency of a minor" was similar to one of the enumerated offenses, this court could have reasonably found, and would so find, that the criminal history point should still apply. See Overholt, 307 F.3d 1231. Therefore, Mr. Watson has failed to show that, if his counsel had objected, the court would have concluded he should not have been assessed a criminal history point, which is Mr. Watson's burden.[18] See Strickland, 466 U.S. at 694 (holding that to

[18] The fact that the standard by which to measure similarity is factor-oriented, alone, signifies that this court would have had considerable discretion in determining whether Mr. Watson's

demonstrate prejudice, the petitioner must show "a reasonable probability that, but for counsel's deficient performance, the outcome would have been different.")(emphasis added). Thus, Mr. Watson cannot demonstrate prejudice to overcome procedural default. Moreover, for the same reasons, counsel for Mr. Watson, in choosing not to object on these grounds, did not act grossly incompetent or outside of the wide-range of legal stratagem.[19] See United States v. Singleton, 624 F.Supp. 2d 520 (W.D. Va. 2009)(finding that counsel was not unreasonable for not raising arguments that certain previous convictions were not cognizable for criminal history points because they would have been rejected by the court). Therefore, Mr. Watson's Motion on this point is denied.

**E. Review of § 3553(a) Factors**

Lastly, Mr. Watson alleges that the court committed error in failing to review the sentencing factors in 18 U.S.C. § 3553(a) and that his counsel's failure to object to this fact constituted

---

conviction was similar to one of the enumerated offenses in § 4A1.2(c)(1) or (c)(2); and, absent binding authority coming to a contrary conclusion, the court's conclusion would have been reasonable. Therefore, the heaviness of Mr. Watson's burden in this habeas corpus Motion is obvious and, indeed, unmet.

[19] Mr. Watson also asserts that his counsel was ineffective because Mr. Dalton did not review the defendant's criminal history file prior to sentencing. There is absolutely no evidence of this fact in the records, files, or motions, and the defendant offers none. In fact, there is only evidence to the contrary. Mr. Dalton both spoke with Mr. Watson regarding the PSR and the criminal history points, and ensured that proper corrections were made to the PSR. (See Dalton Aff. ¶ 7.) Mr. Watson surely has not carried his burden on that issue.

ineffective assistance of counsel.[20] However, Mr. Watson proffers absolutely no evidence on this allegation; and, in any event, Mr. Watson could offer no persuasive evidence on this allegation because the court did, in fact, go through the § 3553(a) factors at sentencing. Further, "the district court need not discuss each factor set forth in 3553(a) 'in checklist fashion'." United States v. Moreland, 437 F.3d 424 (4th Cir. 2006)(quoting United States v. Dean, 414 F.3d 725, 729 (7th Cir. 205)); see also United States v. Mann, 241 Fed. Appx. 165 (4th Cir. 2007)(rejecting argument that sentences were unreasonable because the district court did not consider each factor in § 3553 and finding that the district court adequately explained the basis for its sentencing decision). As it is Mr. Watson's burden to produce evidence, the court finds this ground for relief specious and without merit.

**III. CONCLUSION**

In this case, Mr. Watson has failed to meet his burden in excusing his procedural default by showing that his counsel was ineffective. Moreover, the record, contrary to Mr. Watson's assertions, establish that he voluntarily and intelligently entered into a plea agreement, where he would plead guilty to counts one, three, and seven, and he was sentenced in accordance with the law.

---

[20] The court notes that Mr. Watson incorporates into this last allegation his claims that the sentencing guidelines range was improperly calculated. However, as noted above, those claims are without merit, and there is no need to rehash them at this stage.

For the reasons set forth above, the court **DENIES** petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Final Order to counsel for the parties and to Mr. Watson's trial counsel, Mr. Dalton.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
United States District Judge

REBECCA BEACH SMITH
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October 6, 2009